■ DEBRA T. DU JACK, Respondent, v JOSEPH M. DU JACK, Appellant. [632 NYS2d 895] —Casey, J. Appeal from a judgment of the Supreme Court (Conway, J.H.O.) granting plaintiff a divorce and ordering equitable distribution of the parties' marital property, entered May 1, 1995 in Albany County, upon a decision of the court.

The primary issue on appeal is whether plaintiff in this divorce action is entitled to a distributive award of a portion of the proceeds received by defendant for his interest in a family-run business when the business was acquired by another company. It is undisputed that defendant's interest in the business was separate property (*see*, Domestic Relations Law § 236 [B] [1] [d]). It is also undisputed that the purchase price paid by Loctite, Inc., a publicly owned company, not only greatly exceeded the value of the business on the date of the parties' marriage, it also greatly exceeded the value of the business on the date of acquisition as determined by ordinary accounting principles. The purchase price reflected Loctite's desire to acquire the particular business and could not be justified solely by reference to the assets of the business or the income generated by the business. According to defendant, the difference between the purchase price paid by Loctite and the value of the business on the date of the acquisition as determined by ordinary accounting principles represented a windfall to defendant in which plaintiff was not entitled to share because it constituted "passive" appreciation of separate property. We find no merit in defendant's argument. "[W]here an asset, like an ongoing business, is, by its very nature, nonpassive and sufficient facts exist from which the fact finder may conclude that the titled spouse engaged in active efforts with respect to that asset, *even to a small degree*, then the appreciation in that asset is, to a proportionate degree, marital property. By considering the extent and significance of the titled spouse's efforts in relation to the active efforts of others and any additional passive or active factors, the fact finder must then determine what percentage of the total appreciation constitutes marital property subject to equitable distribution" (*Hartog v Hartog*, 85 NY2d 36, 48-49 [emphasis in original]).

Inasmuch as the asset at issue here, like the asset at issue in *Hartog v Hartog* (*supra*), is an ongoing business which, "by its very nature", is a "nonpassive" asset (*supra*, at 48), the initial inquiry is whether defendant, as the titled spouse, engaged in active efforts with respect to that asset, even to a small degree. The record clearly establishes that defendant engaged in substantial active efforts with respect to the business.\* The next inquiry must, therefore, focus on the factors relevant in

---

\* Defendant objects to Supreme Court's decision because, instead of making the findings required by Domestic Relations Law § 236 (B) (5) (g), it adopted the 42-page proposed findings of fact and conclusions of law submitted by plaintiff, with a few unexplained changes penciled in. Regardless of any deficiency in the court's decision, we will exercise our authority to

determining what percentage of the total appreciation constitutes marital property (*see, Hartog v Hartog, supra*, at 48-49). Defendant contends that his active involvement in the operation of the business is irrelevant because the appreciation reflected by the purchase price was the product of Loctite's desire to purchase the business and bore no relation to the income generated by the operation of the business. Nevertheless, it is apparent that Loctite was interested in purchasing the ongoing business and not just the assets of the business. Accordingly, defendant's efforts which helped to keep the business going cannot be ignored.

At least as significant is the fact that defendant actively participated in the negotiations with Loctite regarding the details of the sale and defendant ultimately persuaded his father, whose consent was necessary for the sale, that Loctite's offer should be accepted. Defendant also agreed to remain with the business for several months after the sale to educate the Loctite people about the business. The evidence establishes that defendant's efforts played an integral role not only in the ongoing business that was the object of Loctite's acquisition, but also in the consummation of the acquisition, which produced the appreciation. Considering the extent and significance of defendant's efforts and the other relevant factors, we conclude that 40% of the total appreciation of defendant's interest in the business constitutes marital property subject to equitable distribution.

Although the parties refer to several different figures as the amount of the appreciation of defendant's interest in the business, we conclude that $2,500,000 most accurately reflects the appreciation over and above the $43,010 value of defendant's interest on the date of the marriage. Thus, 40% of that amount, or $1,000,000, constitutes marital property subject to equitable distribution. The next inquiry must focus on the factors relevant in determining how that marital property should be equitably distributed between the parties (*see*, Domestic Relations Law § 236 [B] [5] [d]).

The marriage was relatively brief, lasting less than four years. The parties are young and in good health. Defendant's role in the management of the business was established prior to the marriage, and plaintiff contributed nothing to the business or to the acquisition. Plaintiff contends that her share of the asset should reflect her contributions in caring for the parties' children and maintaining the family home. The record, however, reveals that plaintiff hired a nanny to care for the

---

substitute the appropriate discretionary determination supported by the record (*see, e.g., Chasin v Chasin*, 182 AD2d 862, 864-865).

children and hired other people to do the housecleaning. Plaintiff contends that she used her own funds, which were separate property, to pay the parties' living expenses for a period of time after Loctite acquired the business. It is undisputed, however, that plaintiff withdrew $100,000 from the parties' joint account, which had a balance of $125,000 prior to the withdrawal, and that defendant gave plaintiff a substantial amount of Loctite stock. We also note defendant's contention that he will sustain a substantial tax liability if he is required to sell a portion of the Loctite stock which he acquired for his interest in the business. Considering the relevant circumstances of the case and of the respective parties, we conclude that the $1,000,000 of appreciation that is martial property subject to equitable distribution should be distributed 25% to plaintiff and 75% to defendant. Plaintiff is, therefore, entitled to $250,000 of the appreciation which resulted from the sale of the business.

Defendant next claims that plaintiff should not have been awarded maintenance, but the judgment contains no such award. The reference in the judgment to the continuation of a prior Family Court support order is, as plaintiff concedes, limited to the child support provisions of the prior order.

Defendant also challenges the child support award. We agree with plaintiff that defendant's failure to appeal from the prior Family Court order of support precludes him from arguing that Family Court improperly applied the relevant statutory provisions. Nor is this a case where the parties indicated their intent that Supreme Court make an independent determination of child support despite the prior Family Court order (*see, Sarafian v Sarafian*, 140 AD2d 801, 805-806). Nevertheless, the child support issue was litigated before Supreme Court and defendant would be entitled to a reduction in child support upon a showing of changed circumstances (*see, e.g., Matter of Meyer v Meyer*, 205 AD2d 784).

Defendant contends that his income is substantially less than that used by Family Court to calculate the prior support award. To the extent that defendant's argument is based upon the claim that Family Court erred in calculating his income for the purpose of the order of support entered in August 1993, the claim is foreclosed by defendant's failure to appeal the Family Court order. To the extent that defendant's argument is based upon a claimed reduction in income subsequent to the period encompassed by the prior order, we find the record insufficient to support the claim. Defendant's 1993 tax return shows a reduction in income, but a substantial portion of defendant's

income-producing activity involves trading in the stock market, which, by its very nature, can cause substantial fluctuations in annual income. There is insufficient financial data in the record to demonstrate whether the income upon which Family Court calculated child support was an aberration, as defendant contends, or the income shown on the 1993 tax return was an aberration, as plaintiff contends. In the absence of sufficient evidence to demonstrate the changed circumstances claimed by defendant, we conclude that no reduction in child support is warranted at this time.

As to defendant's claim that Supreme Court erred in ordering him to pay for his children's private school education, we note the absence of any findings or explanation to support the award (*see,* Domestic Relations Law § 240 [1-b] [c] [7]). In view of the amount of support defendant is currently paying ($4,843 per month), we conclude that an additional award for private school tuition is not appropriate. We see no basis to disturb any other provisions in the judgment.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by deleting therefrom the fifth decretal paragraph and by reducing the amount specified in the 13th decretal paragraph from $833,000 to $250,000, and, as so modified, affirmed.